UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GREAT NORTHERN INSURANCE COMPANY a/s/o
SHIRA WHITE,

                                              1:21-cv-00685 (BKS/CFH)

                            Plaintiff,

v.

ADT LLC,

                            Defendant.
_____

**Appearances:**

*For Plaintiff:*
Michael S. Munger
Eustace, Prezioso & Yapchanyk
55 Water St., 28th Floor
New York, NY 10041

*For Defendant:*
William E. Vita
Joesph A. Iemma
Shook, Hardy & Bacon, LLP
1325 Avenue of the Americas, 28th Floor
New York, NY 10019

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Great Northern Insurance Company commenced this subrogation action in New York State Supreme Court, Greene County seeking to recover from Defendant ADT LLC the monies it paid its insured, Shira White, after a furnace at White's property malfunctioned and a pipe froze and burst causing extensive water damage. (Dkt. No. 2). Plaintiff asserts claims of breach of contract, negligence, and gross negligence, stemming from Defendant's alleged failure

to notify White of low temperatures at her property. (*Id.*). Defendant removed the action to this Court based on diversity jurisdiction and moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. Nos. 1, 6, 7). Plaintiff responded in opposition to Defendant's motion, (Dkt. No. 21), and Defendant replied, (Dkt. No. 25). For the reasons below, Defendant's motion to dismiss is granted in part and denied in part.

## II.     FACTS[1]

White owns a property on Ira Vail Road in Leeds, New York. (Dkt. No. 2, ¶¶ 1–2, 11). At some point prior to January 22, 2019, White hired Defendant, a residential home security and monitoring company, "to install a home security system" at her property, "including sensors and monitors for heat or lack thereof." (*Id.* ¶ 12).

The Complaint alleges that there was an agreement that "[Defendant] would properly notify [White] of any lack of heat" and "of freezing/low temperature conditions within the home so as not to cause damages to the premises." (*Id.* ¶¶ 12, 21). Plaintiff further alleges that "Defendant agreed to perform its work, labor and services in a safe and workmanlike manner as in accordance with all applicable standards, codes and practices." (*Id.* ¶ 21). [2]

On or around January 7, 2019, Defendant received a low temperature alarm concerning White's property. (*Id.* ¶ 25). Defendant, however, failed to notify White, "thus preventing [White] from addressing a freezing condition which directly lead" to the damage at her property. (*Id.* ¶¶ 14, 25). The furnace at the property had malfunctioned, "causing the premises to lose heat." (*Id.* ¶ 13). "On or about January 22, 2019, a pipe froze, ruptured and burst," causing water intrusion and related damages in excess of $757,767.31. (*Id.* ¶¶ 2, 15). Plaintiff paid White for

---

[1] The facts are drawn from Plaintiff's Complaint. (Dkt. No. 1). The Court assumes that all well-pleaded facts are true and draws all reasonable inferences in Plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[2] There are no other allegations regarding the agreement.

the damages under the insurance policy that covered the premises. (*Id.* ¶¶ 2, 4). On April 1, 2021, Plaintiff filed this action against Defendant alleging breach of contract, negligence, and gross negligence and seeking damages for the amount paid to White. (Dkt. No. 2).

## III.    DISCUSSION

### A.    Materials Outside of the Complaint

Defendant attaches several documents in support of its motion, (*see* Dkt. Nos. 8-1, 8-2, 25-3, 25-4), and Plaintiff attaches several documents to its opposition, (Dkt. Nos. 21-2 to 21-4). Thus, as a preliminary matter the Court must decide which of these documents, if any, to consider in resolving the motion to dismiss.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). Even where a document is integral to the complaint, it must be "clear" that "no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Id.* at 231. "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion

3

for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

First, Defendant attaches an affidavit from Marcia Gold, Manager of Legal Operations at ADT, asserting that Defendant "has been unable to locate the original contract," due to "the age of the account," but attaching an "exemplar contract" which Defendant maintains is "consistent with the terms and conditions" under which Defendant provided services to White. (Dkt. Nos. 8-1, 8-2). As Defendant notes, courts often consider the contract at issue in a complaint asserting breach of contract. *See Bovee & Thill LLC v. Pearson Educ., Inc.*, 564 F. Supp. 2d 199, 200 (S.D.N.Y. 2008) (citing *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005)). Here, however, Plaintiff "denies that a contract was formed pursuant to the terms and conditions contained in the" exemplar. (Dkt. No. 21, at 5). Because the authenticity and accuracy of the exemplar contract is at issue, the Court will not consider it or the affidavit from Gold. *See Chambers*, 282 F.3d at 154 (finding that the district court erred in considering unsigned draft collective bargaining agreements on a motion to dismiss without converting the motion to one for summary judgment).

Similarly, the Court will not consider the documents Plaintiff attaches to its opposition: an affidavit from White, (Dkt. No. 21-2), a Brink's Home Security "Protective Service Agreement," (Dkt. No. 21-3), and a January 27, 2019 letter from Lena Harris, Customer Care Team Lead at ADT, (Dkt. No. 21-4). None of these documents were incorporated by reference or relied upon in the Complaint. *See Nicosia*, 834 F.3d at 230.[3]

---

[3] The relevance of the Brink's Home Security "Protective Service Agreement" is unclear: Plaintiff provided no explanation regarding the document, attaching it as part of "Exhibit A," alongside White's affidavit, and redacting the signature lines for the customer and the Brink's Home Security Authorized Representative. (Dkt. No. 21-3).

4

Finally, in its reply Defendant attaches another affidavit from Gold with two "Rider Agreements" purportedly signed by White on November 29, 2011, agreeing that Defendant would install a "Dual Temperature Sensor Climate Change" device at White's Ira Vail Road property. (Dkt. Nos. 25-3 and 25-4). The Complaint makes no mention of Rider Agreements, alleging only that: "Prior to January 22, 2019, plaintiff[']s insured hired, retained, and[/]or authorized ADT, LLC to install a home security system including sensors and monitors for heat or lack thereof and an agreement that ADT would properly notify plaintiff's insured of any lack of heat." (Dkt. No. 2, ¶ 12). Moreover, because Plaintiff has not had an opportunity to respond to these documents that were submitted with Defendant's reply, the Court cannot determine whether there is any dispute regarding the relevance or authenticity of the documents. For these reasons, the Court will not consider them in resolving the present motion.

### B. Arguments Based on the Exemplar Contract

Defendant's first two arguments for dismissal are based upon the exemplar contract. (Dkt. No. 8-2; Dkt. No. 7, at 12–16). It argues that the breach of contract claim is barred by the one-year limitation of action provision and the risk-allocation provision. Specifically, Defendant cites to the exemplar contract provisions that "no suit or action shall be brought against ADT more than one [] year after the accrual of the cause of action," and that "ADT shall be exempt from liability for loss, damage, or injury due directly or indirectly to occurrences, or consequences therefrom, which the service of system is designed to detect or avert." (Dkt. No. 7, at 12–16). However, as explained above, the Court does not consider the exemplar contract in resolving the present motion. Accordingly, Defendant's motion to dismiss the complaint based on the terms of the exemplar contract is denied.[4]

---

[4] In its opposition brief, Plaintiff "refutes that the contract was written." (Dkt. No. 21, at 4). The allegations in the Complaint do not specify the form of the contract between White and ADT. (*See* Dkt. No. 2, ¶¶ 12, 21). Thus, the

### C. Negligence and Gross Negligence

Defendant argues that because its alleged duty to notify White of lack of heat arose solely from their contract, Plaintiff's negligence and gross negligence claims fail for lack of an independent tort duty. (Dkt. No. 7, 16–18). Defendant also argues that "the alleged inadequate response to an alarm signal does not constitute gross negligence as a matter of law." (*Id.* at 18). Plaintiff has failed to cite any caselaw in response to these arguments, asserting only that Defendant had a duty to monitor White's home and inform her "of any low temperature alerts received," which was "[i]ndependent of the contract," (Dkt. No. 21, at 11–13), and that Defendant's failure to do so rose to "the level of reckless indifference," (*id.* at 13–14).

Under New York law, "[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 460 (N.Y. 2018) (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)). An independent legal duty "must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Those Certain Interested Underwriters, at Lloyd's, London, subscribing to Policy No. Z101663/003 v. Farley Grp.*, Nos. 12-cv-0707, 13-cv-385, 2015 WL 5602924, at *35, 2015 U.S. Dist. LEXIS 134148, at *94–95 (N.D.N.Y. Sept. 23, 2015) (first citing *Clark-Fitzpatrick, Inc.*, 516 N.E.2d at 193–194; and then citing *Avazpour*, 937 F. Supp. 2d at 361).

---

Court disregards Plaintiff's assertion regarding the form of the contract. *See Perez v. Ponte*, 236 F. Supp. 3d 590, 603 (E.D.N.Y. 2017 ("[C]ourts generally will not accept factual allegations raised for the first time in opposition to a motion to dismiss."). Moreover, the Court does not consider Defendant's argument, raised for the first time in its reply brief, that if the contract is oral, Plaintiff's breach of contract claim is barred by the statute of frauds. (Dkt. No. 25, at 2–5); *see Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010).

6

In *Sommer v. Federal Signal Corp.*, the New York Court of Appeals recognized that "[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' 'relationship' and that several types of defendants—including professionals—can be held liable in tort 'for failure to exercise reasonable care, irrespective of their contractual duties.'" *Dormitory*, 94 N.E.3d at 460 (citing *Sommer v. Federal Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y. 1992)). In that case, the owner of a skyscraper in Manhattan contracted with an alarm company franchised and regulated by New York City to provide "central station monitoring service" pursuant to a "comprehensive scheme of fire-safety regulations." *Sommer*, 593 N.E.2d at 1367, 1370. A fire in the skyscraper allegedly "spread out of control" causing damages exceeding $7 million after a dispatcher ignored fire signals from the building. *Id.* at 1367. Several factors supported the Court of Appeal's decision to find an independent legal duty:

> (1) that the fire alarm company's duty of care derived not only from contract but from the nature of its services; (2) that the fire alarm stations [were] franchised and regulated by the City; (3) that the fire alarm company served a significant public interest; (4) that the breach of the fire alarm company's duties could have catastrophic consequences; (5) the nature of the fire alarm company's relationship with the skyscraper owner; and (6) the sudden manner of the loss.

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 17 (2d Cir. 2000) (citing *Sommer*, 593 N.E.2d at 1365); *Hartford Fire Ins. Co. v. Atl. Handling Sys.*, No. 09-cv-4127, 2011 WL 4463338, at *6, 2011 U.S. Dist. LEXIS 109030, at *18–19 (E.D.N.Y. Sept. 26, 2011) (same). The Court of Appeals emphasized that the fire alarm company, which was part of New York City's "comprehensive scheme of fire-safety regulations," performed a service "affected with a significant public interest," as "failure to perform the service carefully and competently c[ould] have catastrophic consequences." *Sommer*, 593 N.E.2d at 1370. The Court of Appeals distinguished "between the situation where the harm was an 'abrupt, cataclysmic occurrence' not

contemplated by the contracting parties and one where the plaintiff was essentially seeking enforcement of contract rights." *Dormitory*, 94 N.E.3d at 462 (citing *Sommer*, 593 N.E.2d at 1369).

"The contractual relationship between an alarm company and its subscriber does not generally give rise to such a separate tort duty." *Vigilant Ins. Co. v. ADT Sec. Servs., Inc.*, No. 10-cv-3066, 2011 WL 855874, at *2, 2011 U.S. Dist. LEXIS 25355, at *9 (S.D.N.Y. Mar. 8, 2011). For example, in *Sidik v. Royal Sovereign Intern., Inc.*, 348 F. Supp. 3d 206 (E.D.N.Y. 2018) and *Vigilant*, 2011 WL 855874, 2011 U.S. Dist. LEXIS 25355, courts found, in similar circumstances to the case at hand, that ADT had no independent legal duty to a subscriber, distinguishing their cases from *Sommer*.

In *Sidik*, a homeowner contracted for alarm monitoring and notification services and equipment installation provided by ADT. 348 F. Supp. 3d at 209–10. There was a housefire, and by the time the smoke reached the allegedly negligently-installed smoke detector, the bedrooms were "engulfed in smoke," resulting in severe injuries to three individuals in the home. *Id.* at 211. The homeowner sued ADT, among others, alleging "tort-based claims, based on an independent duty of reasonable care to install and monitor smoke alarms." *Id.* at 216. However, the district court found "no basis for negligence liability," and that "ADT's responsibility to install, monitor, maintain, and test the system arose from the Contract." *Id.* at 217. The court noted that, unlike in *Sommer*, this case involved "a homeowner, who elected to install a residential alarm system in a single-family residence." *Id.* Even though the homeowner alleged that "the installation of the fire alarm/smoke detector violated industry standards as well as internal policies and procedures," the court noted that there was "no allegation that [ADT] violated a 'comprehensive scheme of fire-safety regulations,' which requires a certain level of

8

fire/smoke detection," and therefore, "the public interest discussed in *Sommer* is not present in the instant case." *Id.*

Similarly, in *Vigilant*, ADT installed an alarm system at a vacation home. 2011 WL 855874, at *1, 2011 U.S. Dist. LEXIS 25355, at *2. The homeowner informed ADT of a problem with the system, but ADT allegedly failed to inspect, repair, or service it. *Id.*, 2011 U.S. Dist. LEXIS 25355, at *2–3. There was then a fire at the vacation home resulting in over $1.8 million in damage, and the alarm system failed to send a signal to the ADT central service station. *Id.*, 2011 U.S. Dist. LEXIS 25355, at *3. The court found that the homeowner's claims based on ADT's allegedly tortious conduct failed for lack of an independent tort duty, noting that "[t]he relationship between ADT and [the homeowner] was defined by the Contract wherein [the homeowner] contracted with ADT to install and monitor his alarm system." *Id.*, 2011 WL 855874, at *2–3, 2011 U.S. Dist. LEXIS 25355, at *9–11 (citing *Spengler v. ADT Sec. Servs., Inc.*, 505 F.3d 456, 458 (6th Cir. 2007)). The court explained that unlike in *Sommer*, where the plaintiff was required by local law to equip the building with an alarm system, in *Vigilant*, the homeowner "chose to have a fire alarm system installed in his home and chose to have ADT monitor that system," and there was no allegation that the plaintiff was required to do so by regulation or that ADT had a "special relationship with a city." *Id.*, 2011 WL 855874, at *3, 2011 U.S. Dist. LEXIS 25355, at *10–11. The court thus found that ADT's obligation to install and monitor the alarm system "arose only under the Contract," and that "[s]imply put, ADT did not owe [the homeowner] an independent duty to perform its contractual obligations with care and skill." *Id.*, 2011 U.S. Dist. LEXIS 25355, at *10–11.

Here, the Court does not have before it the contract between White and Defendant: Plaintiff's allegations regarding its terms are sparse, referring only to certain "agreements"

9

between White and Defendant. The Court is therefore limited in its ability to determine whether Defendant's duty to "properly inform [White] of any lack of heat" at her property is duplicative of its contractual duties. *See Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) ("If, however, the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative.") (citing *N.Y.U. v. Continental Ins. Co.*, 662 N.E.2d 763 (N.Y. 1995)).

However, on the face of the Complaint, Plaintiff's argument that it has plausibly alleged that Defendant's duty to properly monitor the temperature at White's home and inform her "of any low temperature alerts received" was "[i]ndependent of the contract," is unavailing. In its negligence claim, Plaintiff incorporates its allegation that White and Defendant had "an agreement that [Defendant] would properly notify [White] of any lack of heat." (Dkt. No. 2, ¶ 12). The breach of contract "incorporates and re-alleges" the negligence claim and adds that "Defendant agreed to perform its work, labor and services in a safe and workmanlike manner as in accordance with all applicable standards, codes and practices so as to warn plaintiff of freezing/low temperature conditions." (*Id.* ¶ 21). Thus, as pled, Plaintiff's negligence and breach of contract claims are premised on the same obligations. Regarding the allegation that Defendant would perform in a workmanlike manner, this allegation is only part of Plaintiff's breach of contract claim, which indicates that this agreement was part of Defendant's contractual obligations, and moreover, "[s]imply alleging a duty of due care does not transform a breach of contract action into a tort claim," *Clemens Realty, LLC v. N.Y. City Dep't of Educ.*, 850 N.Y.S.2d 172, 173 (N.Y. App. Div. 2008).

Based on these allegations, Plaintiff has not alleged that Defendant's duty to properly notify her of lack of hear at her property was independent of its contractual duties, and as in *Sidik* and *Vigilant*, such a duty may not be imposed by law. *See Dormitory*, 94 N.E.3d at 460 (citing *Sommer*, 593 N.E.2d at 1369 (N.Y. 1992)). Unlike in *Sommer*, Plaintiff does not allege that White hired Defendant pursuant to a regulatory scheme or that Defendant franchised or regulated by a city. There is no allegation that would allow an inference that Defendant's monitoring of the temperature at White's property would create a strong public interest or that the damage to her property was the type of catastrophic occurrence not contemplated by the contracting parties, like the damage at issue in *Sommer*: the Complaint alleges that the damage was limited to White's property, the subject of their contract. *See Those Certain Interested Underwriters*, 2015 WL 5602924, at *36, 2015 U.S. Dist. LEXIS 134148, at *98–99 (declining to find an independent duty of care where the damage was only to the property at issue in the contract, and the plaintiffs were seeking "purely economic damages" as a result of the defendant's failure to "meet . . . expectations"). Although the damage to White's property was extensive—allegedly in excess of $700,000—it does not rise to the level of the "catastrophic" damage at issue in *Sommer*. *See Vigilant*, 2011 WL 855874, at *1, 2011 U.S. Dist. LEXIS 25355, at *2 (finding no independent legal duty for ADT's failure to maintain and repair home alarm system where the fire caused $1.8 million in damage). There is no allegation that the relationship between White and Defendant was "professional or fiduciary," nor is there an allegation that White relied on Defendant to provide a "specialized service," primarily for safety or "to remedy an ongoing problem." *See Hartford Fire Ins. Co.,* 2011 WL 4463338, at *6–7, 2011 U.S. Dist. LEXIS 109030, at *19–20 (collecting cases); *Sidik*, 348 F. Supp. 3d at 217 (noting that the defendants were not "security consultants," and that they were "contracted to render a discrete service").

Finally, even though the pipe bursting at White's property was arguably "sudden," that alone would be insufficient to create an independent legal duty. *See Hartford Fire Ins. Co.*, 2011 WL 4463338, at *9, 2011 U.S. Dist. LEXIS 109030, at *30 ("the presence here of an abrupt loss is insufficient to outweigh the other factors, all of which counsel against the finding of a duty").

Thus, Plaintiff has not alleged that Defendant had a duty to properly alert White of low temperatures at her property independent of their contract, nor can such an independent duty be imposed by law, and accordingly, both its negligence and gross negligence claims must be dismissed. *See Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 365 (E.D.N.Y. 2013) ("The court's holding regarding the lack of any extra-contractual duty requires dismissal of Plaintiffs' first and second causes of action alleging gross negligence and negligent misrepresentation"); *Nirvana Intern., Inc. v. ADT Sec. Servs., Inc.*, 881 F. Supp. 2d 556, 562 (S.D.N.Y. 2012) (dismissing claims of both negligence and gross negligence when the plaintiff had not alleged that ADT had a duty to install an alarm system in a store independent of its contractual duty).[5]

### D.   Leave to Amend

Although Plaintiff has not requested leave to amend, and has not provided any basis to suggest that there is a viable basis to amend, to the extent that Plaintiff believes that it could allege facts sufficient to raise a viable negligence or gross negligence claim, the Court will permit Plaintiff to file a letter motion seeking permission to amend. Any such motion must be

---

[5] Moreover, the Court notes that an inadequate response to an alarm does not typically rise to the level of gross negligence. *See Sidik*, 348 F. Supp. 3d at 218 ("[A]n alarm company whose purported conduct consists of an inadequate response to an alarm system or failure to inspect the system sounds in ordinary negligence, not gross negligence." (first citing *Abacus Fed. Sav. Bank*, 908 N.Y.S.2d 654, 656 (N.Y. App. Div. 2010); and then citing *Am. Auto. Ins. Co. v. Rest Assured Alarm Sys., Inc.*, 786 F. Supp. 2d 798, 807–08 (S.D.N.Y. 2011) ("In the alarm system context, a plaintiff generally does not state a cause of action for gross negligence when the claim is merely one of 'inappropriate installation' or inspection of an alarm system or an 'inappropriate response to an alarm.'")); *Hartford Ins. Co. v. Homes Protection Grp.*, 673 N.Y.S.2d 132, 133 (N.Y. App. Div. 1998) ("Delayed or inadequate response to an alarm signal, without more, is not gross negligence.").

filed with a proposed amended complaint, and comply with N.D.N.Y. Local Rule 15.1(a), and must be filed by April 4, 2022. Defendant may respond in a letter brief by April 18, 2022.

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 6) is **GRANTED** as to Plaintiffs' negligence claim and gross negligence claim (Counts 1 and 3); and it is further

**ORDERED** that the motion is otherwise **DENIED**; and it is further

**ORDERED** that Plaintiff's negligence and gross negligence claims are **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiff may file a letter motion seeking permission to amend, as set forth above, **by April 4, 2022**.

**IT IS SO ORDERED.**

Dated: March 21, 2022
Syracuse, New York

Brenda K. Sannes
U.S. District Judge